### YOUNGSTOWN (city) v PETERS

Ohio Appeals, 7th Dist, Mahoning Co

No 2327. Decided March 26, 1937

Vern S. Thomas, Youngstown, and William E. Lewis, Youngstown, for plaintiff-appellant.

Manchester, Ford, Bennett & Powers, Youngstown, for defendant-appellee.

## OPINION

By NICHOLS, J.

Anna Flick brought suit and recovered a judgment against the City of Youngstown for personal injuries sustained on October 1st, 1932, when she was caused to fall by reason of a defect in the sidewalk located in front of a property situated at the southeast corner of Wick Avenue and Commerce Street in that city.

By a lease dated September 10, 1919, The Realty Trust Company, lessor, leased the premises in front of which the sidewalk above referred to was located to D. T. Peters, lessee, for the period of twenty years with the right to sub-let and sublease the premises subject to the conditions written in the lease, one of which conditions was as follows:

"Said lessee shall keep the sidewalk in front of and along said premises free of ice and snow and other obstructions, and will keep the said sidewalks in a good condition of repair during this lease."

Another condition of the lease is as follows:

"Said lessee will indemnify and save said lessor harmless against any claims of whatsoever nature arising out of the failure of said lessee or any of his sub-tenants to perform any of the obligations and agreements herein specified by him to be performed."

November 17, 1932, the city of Youngstown notified D. T. Peters that Mrs. Flick had made claim against the city and Mr. Peters was requested to defend any lawsuit brought by Mrs. Flick. Under date of June 3, 1933, Mr. Peters received a letter from the city notifying him that the city had been sued by Anna Flick for damages resulting from a fall on the sidewalk in question, and he was advised that the city would look to him as abutting owner and that if the city was compelled to go in and defend the suit all costs of the same would be charged against him as abutting owner. Mr. Peters did not defend the action of Mrs. Flick against the city, but the same was defended by the Legal Department of the city, resulting in a judgment in her favor for $1,000.00 and costs.

Under date of February 20th, 1935, the city of Youngstown, in writing, notified Mr. Peters that judgment had been recovered against the city by Anna Flick, and that the city had paid the judgment of $1,000.00 with interest, and costs; and thereafter the Council of the City of Youngstown by ordinance adopted by the Council, instructed the Law Department to sue Mr. Peters, seeking to recover back the amount of the judgment paid by the city. Thereafter this action was brought by the city against Mr. Peters to recover the amount paid by the city in satisfaction of the judgment.

The petition of the city against Mr. Peters alleged that the plaintiff is a municipal corporation under the laws of Ohio; alleged the facts above recited, and further alleged that the street whereon Anna Flick fell and was injured is a duly dedicated public street in the city; and further alleged as follows:

"the sidewalk in front of said premises was, on October 1, 1932, and for several months prior thereto, suffered by said defendant to become and remain, at a point approximately in front of what is known for street purposes as 19 Wick Avenue, in

a defective and unsafe condition, in this, to-wit: The defendant had and maintained, for his own convenience and business, an open areaway constructed and used in connection with the said building which said areaway extended into and underneath said sidewalk for several feet, the covering of which areaway, flush with the surface of the sidewalk, was iron or other metal imbedded in concrete and contained numerous round openings approximately three inches in diameter, which were made for the purpose of being covered or filled with pieces of glass; that on the day of the accident * * * and for several months prior thereto, many of said openings or perforations were not closed up, filled or covered, but were open and unprotected, and although previous to the date of said accident plaintiff notified the defendant to cover up, fill or otherwise repair the condition of said sidewalk, defendant failed and neglected to do so."

The petition further set forth that in addition to the duty incumbent upon defendant' to keep the premises in a reasonable condition of repair and free from nuisance, defendant specifically undertook and agreed, in his lease from The Realty Trust Company, to keep the sidewalk in a good condition of repair during the term of the lease, and that the lease was in full force and effect at all times stated in the petition.

The petition also set forth the injury to Mrs. Flick when she was caused to fall and injure herself by reason of her right heel being caught in one of the open and unprotected holes in the structure of the areaway, and further alleged the facts hereinabove recited, and that "as a direct result of said defendant's failure to keep said premises in a good condition of repair, as aforesaid, and of his failure to appear and defend said action at the time he was so notified and requested by the plaintiff," the city was compelled to expend the total sum of $1268.20, for which it prayed judgment against the defendant.

The defendant answered the petition of plaintiff, admitting that the city is a municipal corporation; that the defendant at the time alleged in plaintiff's petition was a lessee of the land located as in the petition described, together with the building situated thereon; admitted that the sidewalk on the Wick Avenue side of the building has inserted in it numerous round openings, approximately three inches in diameter, fitted with glass; that at the time

alleged in the petition Anna Flick fell on the sidewalk in front of this property; that she brought the action against plaintiff and recovered judgment in the sum of $1,000.00. The answer denied all other averments of the petition.

Upon the trial it further appeared, by the admission of the parties, as follows:

"While Peters is the lessee of this building, he isn't in actual possession of it, * * * that is, he doesn't inhabit the building himself. He wasn't occupying any part of the building and 'never did,' but he did 'sublet to various tenants and the subtenants were occupying the entire building * * * during all the time since this lease was in existence'."

It is further admitted that the defendant did not construct the vault or room out under the sidewalk but that it was there at the time he took the lease from The Realty Trust Company. It was further stipulated that the place where Mrs. Flick received her injuries was a point in the sidewalk where the same extends over the vault or room constituting a part of the basement of the building on the leased premises.

A jury was waived by the parties and the cause submitted to the court and judgment rendered in favor of the defendant and against the city. The cause is in this court on appeal of law from the judgment of the Common Pleas Court.

From the transcript of the evidence it appears that about the year 1891 a brick business block was built on the property owned by The Realty Trust Co. and at the same time the sidewalk was constructed about fifteen feet in width. The basement of the building extends about three feet out under the sidewalk and the portion of the sidewalk immediately over the basement is constructed of a metal frame in which glass prisms are inserted, commonly called "bulls' eyes." At some time after the original construction, one or more of these "bulls' eyes" came out of the metal frame and Mrs. Flick caught her foot therein, was caused to fall and received the injuries for which she recovered judgment.

The evidence does not show just when the prism came out of the hole into which Mrs. Flick's foot was caught, but the city offered some evidence indicating that on January 15, 1932, it notified Mr. Peters of the defective condition of the sidewalk, and since there is no evidence in the record showing that the defect existed earlier

than January 15, 1932, and since there is no claim that the original construction was faulty, it must be held that the sidewalk became out of repair during the term of the lease of Mr Peters and that he had constructive notice of the defect in the sidewalk prior to and at the time of the accident.

The record presents the following questions:

(1) Is the owner of property abutting upon a public street of a municipality liable over to the municipality for a judgment recovered against the city and paid by it for injuries received by a pedestrian on the sidewalk, when such pedestrian was caused to fall by reason of a defect in that portion of the sidewalk covering an areaway constructed thereunder by the owner of the building, there being no claim or proof that the original construction was faulty or created the dangerous condition, but where the evidence reasonably tends to show that the defective condition came into existence after the city had accepted the sidewalk and became liable under §3714, GC, to keep the same open, in repair and free from nuisance.

(2) Is the lessee of the owner liable over to the municipality for a judgment recovered against the city and paid by it for injuries received by a pedestrian under the circumstances stated in question number one by reason of a covenant in the lease whereby the lessee agrees to keep the sidewalk in repair during the term of the lease and to indemnify and save the owner harmless against any claims of whatsoever nature arising out of the failure of the lessee or any of his subtenants to keep the sidewalk in repair?

(3) Is the lessee under the lease referred to in question number two and under the circumstances therein stated liable over to the city when such lessee is not in possession of the leased premises at the time of the injuries to the pedestrian but has sublet the premises and every part thereof to tenants who are in actual possession of the premises at the time of the injuries to the pedestrian?

(4) Can the city recover over from any person other than one who has actively created the defective condition in the sidewalk giving rise to the injuries to a pedestrian after the city has accepted the sidewalk and become liable under §3714, GC, to keep the same open, in repair and free from nuisance and where the nuisance in the street exists merely because of the failure of the abutting owner, his lessee,

or subtenants of the lessee to repair the street after the original construction?

In answering the questions above set forth we first refer to the case of **Morris v Woodburn, 57 Oh St 330,** the syllabus of which is as follows:

"If the owner of a lot abutting upon a street of municipality, for the use of his property, constructs a vault under the sidewalk over which he negligently places and maintains a defective covering, he is liable directly to a footman injured thereby, notwithstanding the omission by the municipality of the duty imposed upon it by statute to keep the street in repair."

In the opinion in the above case it is stated:

"It is thought by counsel for the plaintiff in error, that upon the facts which the petition alleges and the evidence offered in its support at the trial tends to prove, the judgment should be in her favor. This conclusion is drawn from the legal propositions that the statute * * * charges upon the municipality the duty of keeping streets and sidewalks open and in repair, and that the duty of constructing and maintaining sidewalks, is not, either by the statute or the common law, charged upon the owner of abutting property. These propositions are well sustained by the provisions of the statute and the decided cases. They would justify the conclusion drawn by counsel if the negligence charged against Mrs. Morris, like that charged against the city in the original petition, consisted of mere omissions of supposed duty. But while the tort of the city consisted in the failure to discharge a duty imposed by statute, that alleged * * * against Mrs. Morris consisted in the **creation of a nuisance,** dangerous to those using the walk. * * * and it appears from reason and authority that the primary liability in such case is upon him who actively creates the nuisance; so that if a recovery were had against the city, it might in turn recover from the perpetrator of the wrong."

The emphasis is ours.

In the cited case we think the Supreme Court has made it clear that liability over to the city exists as against an abutting property owner, or, for that matter, against a person, who actively creates a nuisance in the sidewalk as distinguished from one whose negligence with relation to the de-

fective condition of the sidewalk exists from mere omissions to keep the same in repair.

We next refer to the case of **Wilhelm v The City of Defiance, 58 Oh St 56** and quote the syllabus:

"A municipal corporation, having in the proper mode provided for the construction of a sidewalk and notified the owner of abutting land, may require of him the construction of a sufficient walk in front of his premises, and, upon his default, may itself construct such walk and assess the cost thereof upon his land; but it cannot recover from the indemnity on account of a judgment recovered against it for injuries occasioned by such owner's negligent construction of the walk."

In the opinion the court, after referring to the case of Morris v Woodburn, supra, and certain other authorities and quoting the statute imposing the duty upon the municipality to keep its sidewalks in repair and free from nuisance, says:

"The policy of the statute, as indicated by its provisions according to the doctrine of the cases cited and the numerous cases which they review, seems to require the conclusion that when a municipality accepts a sidewalk constructed by the owner of abutting property pursuant to its notice, as a compliance therewith, all liability for mere negligence in construction and maintenance must rest and remain upon it."

A reading of the opinion in Wilhelm v The City of Defiance, supra, as well as the syllabus above quoted, clearly indicates that in Ohio an abutting property owner is liable where the defective condition has been created by him but is not liable over to the city by reason of mere negligence of the abutting owner occasioned by his omission to keep the sidewalk in repair.

From the opinion in the case of **Bello v City of Cleveland, 106 Oh St 94**, we quote from p. 104:

"The abutting property owner, in his relation to the street and sidewalks, only owes the duty not to create a dangerous situation. The city owes the duty not to knowingly permit one to exist, whether it be caused by its own agents and servants or by other persons."

Here our Supreme Court again asserted that the abutting property owner only owes the duty not to create a dangerous situation in the sidewalk, and the court further says at p. 105 of the opinion:

"* * * our courts have indicated that a municipality may recover over from any party who has caused the situation resulting in a successful suit against the city."

It would seem apparent that if the owner of the abutting property is liable only where he has actively created a nuisance in the sidewalk, no other or greater liability would rest upon the owner's ██ lessee, unless the provision in the lease of appellee wherein he covenanted to keep the sidewalk in repair and save the owner harmless gives rise to an obligation running in favor of the injured pedestrian with the resultant right of the city to recover over.

The covenants of the lease to appellee are for the apparent purpose upon the part of the owner of further insuring that in the event the owner should be compelled to respond in damages for injuries received by reason of any defect in the sidewalk the lessee would indemnify and save the owner harmless. There is no admission of liability against the owner; nor is the lessee, by reason of the covenant in his lease, interposed in this action. There is no privity of contract running in favor of the city by reason of the lease. Aside from this, when we keep in mind the uncontraverted evidence in the case at bar to the effect that the appellee was never in possession of the leased premises, but at all times sublet the same to subtenants who were in possesion when the defect in the sidewalk arose, and at all times during the continuance thereof until the pedestrian was injured, we are brought to face with another proposition of law well recognized in Ohio applicable to such situation. We cite the case of **Shindelbeck v Moon, 32 Oh St 264**, and quote from the syllabus:

"A landlord who has demised property, parting with possession and control thereof to a tenant in occupation, is not responsible for injuries arising from defective cosditions of such premises, when that defect arises during the continuance of the lease."

In the recent case of **Berkowitz v Winston, 128 Oh St 611**, at p. 612, the Supreme Court says:

"The test to be applied in every case involving the liability of an owner for injuries arising from the defective condition

of premises under lease to another is the question whether the landlord was in possession or control of the premises, or the part thereof the disrepair of which occasioned the injury." ,

In Hess v Devou, 112 Oh St 1, it is stated in the syllabus:

"A lessor of a building, out of possession and control, is not responsible for injuries caused by a defective condition of the premises arising during the continuance of the lease where no claim is made of defects in original construction."

In the case of Hess v Devou, supra, the plaintiff was walking along a sidewalk and fell into an open cellarway, the door of which had been left open by a tenant, the landlord being out of possession and out of control. , ,

Other cases to the same point are:

Stackhouse v Close, 83 Oh St 339;

Marqua v Martin, 109 Oh St 56.

In the early case of Burdick v Cheadle, 26 Oh St 393, the owner of premises leased the same to his tenant and covenanted with the tenant that he. the owner, would keep the premises in good order. It was claimed upon behalf of one injured by reason of the defective condition of the premises that a lessor who, as between himself and the lessee, is bound to keep the leased premises in good order, is liable for a nuisance which may originate during the continuance of the lease. It was held by the court that the liability of the lessor who had covenanted to keep the premises in repair existed only in favor of persons standing strictly upon their rights as strangers to the property, and as to whom it was the duty of the lessor to remove or repair the structures.

In the case at bar, as we have hereinbefore shown, there were no rights existing in favor of the injured █ pedestrian as against the appellee; hence, the covenant of the lessee to keep the premises in repair creates no liability against the lessee in favor of the injured person or as the basis of the right of the city to recover over.

We find and hold there is no error in the judgment of the trial court prejudicial to the rights of the city of Youngstown and that the judgment of the Common Pleas should be, and the same is, affirmed.

Judgment affirmed.

ROBERTS and CARTER, JJ, concur.